Case number 21-5266 Federal Law Enforcement Officers Association appellant versus Kiran Ahuja in her official capacity as Director of the United States Office of Personnel Management and Office of Personnel Management. Mr. Griffin for the appellant, Ms. Mohan for the evidence. Mr. Griffin, good morning. Good morning, Your Honor. May it please the Court. Section 8467 of Title V contains Congress' instructions to OPM on how to interpret and process divorce court orders when administering federal retirement benefits. The statutory instruction is clear. OPM may pay federal benefits to someone other than the retiree only to the extent expressly provided for in a divorce decree. The purpose of this standard is equally clear as recognized by the agency itself when it implemented formal regulations for this act, and that is to keep the federal government out of the substance of marital property disputes. And to restrict OPM to a purely ministerial role. In 2016, after nearly 30 years of administering the current retirement statute, OPM took an interpretive U-turn. Without any notice or opportunity for comment, it decided that the expressly provided for standard does not apply with respect to the annuity supplement that retired federal law enforcement officers receive as a stand-in for the social security benefits for which they are ineligible during the period from their statutory retirement age until age 62. Instead, for this benefit and this benefit alone, OPM began looking only at whether a divorce decree expressly divides an entirely different federal benefit, that is, the basic annuity provided to all federal civilian employees. If so, OPM will now automatically apportion a retiree's supplement along with the basic annuity, regardless of what the decree says or doesn't say about the supplement. One group of affected retirees, those whose basic annuities were already being divided, but who were receiving the entirety of their supplements at the time of the rule change, immediately saw cuts to their retirement income. Not only that, but OPM applied this new interpretation retroactively and began clawing back portions of annuity supplements from retirees whom it had already paid in full. You're going to get to the jurisdictional issue? Yes. It's a big one. It is, indeed. And we can't do anything if there's no jurisdiction? You are correct. And I was about to get there, but let me turn to that now. And please, we have a rule against reading. Don't read. Just talk to us. Sure. Ah. OPM argues that you don't have jurisdiction for this case because it says that this court's opinion, Judge Edwards' opinion, in Devine is no longer good law. Mine's gotten beaten up over the years. Well, I'm on your side here. We believe Devine- Well, you don't know what my side is, because I'm now concerned with the cases. Fair enough. We're on the side of Devine. We think Devine is wholly consistent with later cases, including Thunder Basin Coal, that draw a clear and workable distinction between claims that effectively resolve individual benefits and are appropriately channeled through the MSPB, and traditional APA rulemaking claim, which, as Judge Henderson, as you noted, in the Knapp Medical Center case, there's a strong presumption in favor of judicial review for those type of claims. What about Fornaro and Elgin in the AFGE cases? I mean, Fornaro is pretty explicit at saying even if it's a systemic challenge, if it's a challenge to a broad policy, it has to go OPM, MSPB, Federal Circuit. Well, Fornaro and Elgin, Fornaro was not an APA claim. So what the case in Fornaro was plaintiff seeking a writ of mandamus. The individual plaintiff seeking a writ of mandamus in the district court, asking OPM to change their individual benefit. There had been a recent Federal Circuit case that had increased, granted enhanced benefits to one group of retirees, and they said, we think we're entitled to that too,  Elgin was also not an APA case. That was a constitutional claim challenging the constitutionality of the Selective Service Statute. In both of those cases, the key distinction is that they resolve individual claims. So after those cases, the plaintiffs before the court were going to have their decision changed or not. We're not asking the court here to resolve any individual claim. I mean, maybe you should be. You're characterizing it as not asking for change in individual claims, but you're absolutely in here on behalf of and representing individual claimants who are dismayed at what's happened to their payments. So it's not pre-enforcement, which is the line I thought you were drawing, to put yourselves under divine. Here, there has been, and is ongoing enforcement as your complaint itself, alleged that you're seeking to halt the continuing application of this policy. Well, it is pre-enforcement for two groups of people who are presently adversely affected. It's the same policy. The fact that enforcement hasn't reached everybody doesn't mean that it's pre-enforcement. Well, it is pre-enforcement. Same policy. It's one policy. It is the same policy. But even for people whom it has already reached, what we are asking is not for the court to look at a divorce decree and decide what it means. So our view is that in order to decide an individual case, what OPM has to do is apply 8467, the expressly provided court rule, and look at the decree and see, does this decree, the specific language in this individual case, expressly provide for a division of the supplement? OPM says, no, we don't have to make that inquiry at all because 8421 says, we just do that inquiry for the basic annuity, and if so, we divide the supplement too. And what we're saying is, no, tell OPM they have to go back and apply 8467, expressly provided, with respect to what the divorce court says about the annuity supplement. And how particular language in a divorce decree will come out in an individual case, we don't know. We're not arguing because we're not taking an issue with how OPM reads and applies that expressly provided for standard. All we're taking issue with is whether they apply it at all with respect to the annuity supplement, or they just skip that step. And that's why there's no individual decisions here, even if we had individual plaintiffs with individual decrees in front of the court. So tell me how you're getting around Fornero, Elgin, Fornero. Allowing district courts actions challenging how OPM calculates civil service benefits for particular classes of beneficiaries would plainly undermine the whole point of channeling review of benefit determinations to the MSPB, the federal service. Elgin, you say this, where is the case law that carves out a divine exception? I don't see it. We think divine is wholly consistent with Thunder Basin Call. And so I would ask you to take a step back to the Thunder Basin Call inquiry and walk through the framework. And I think you'll find that divine fits into that framework on one side of the line. Elgin, Fornero. Where does Thunder Bay say we make an exception for pre-enforcement or for rules or for what? I'm not sure how you want to characterize it. So I'm going to say that for you. Where does Thunder Bay say that? I think Thunder Bay is one of the cases that works heavily against you. Well, I disagree on that point. So what Thunder Basin says is the first step you look at is, did Congress intend to preclude some type of cases? And the answer to that is absolutely yes, that's not in dispute. But the second step of Thunder Basin Call is, OK, well, what is the scope of that preclusion? And this court has looked at that in a number of cases. We cite the Jartici v. SEC case, which says, OK, at step two of Thunder Basin Call, you look at the congressional intent and figure out what kind of cases Congress was intending to preclude and what kind it wasn't. And what case tells us, other than Devine, what kind of, what case tells or gives us the answer to that question? Well, the primary answer to that question is the question of what Congress intended. And so I will direct you to a stat. 8461, I believe, has the answer of what Congress intended. And what 8461 says, 8461C says, for claims under Chapter 84, the FERS system, you bring those in the first instance to OPM. Chapter 84 provides individual benefits. So it's talking about individual claims. 8461E says, if an OPM action affects the rights or interests of an individual, you can then bring that to the MSTB. And so you read those two together, and the scope of what Congress is  And so that's the first piece of that answer. It's individual benefit claims. And now there's a second piece to that puzzle, is when you, now that you know that, can you also infer from that, from that channeling of individual claims that Congress also intended to channel traditional APA claims to that channel? And the answer is no. And the reason is, and Judge Henderson said this very well in that Medical Center case, there is a strong presumption in favor of maintaining jurisdiction for APA review. And we're not going to read Congress as writing that off unless there is specific language convincing a clear intent to channel APA claims through the administrative process. And here there isn't. 8461 just says you take individual claims through that process. And it doesn't say anything about APA claims. And that, under the NAP Medical Center case, could mean that they're still available. You want to reserve the rest of your time? Well, if I can, if I can turn to the merits of the jurisdictional questions, let me, let me just address that quickly. And I want to remind the court, we have three claims on the merits. And let me start quickly with claim two. Claim two is a standard notice and comment claim. Our argument is that there, this is a legislative rule, whatever you think the statute means, this is a legislative rule because it had an immediate impact on affected retirees. People immediately lost benefits. People immediately became indebted to the federal government for benefits they had received before. And so we would argue that that requires notice and comment rulemaking. And that without even getting into what the statute means, you should send, you should invalidate the rule and send it back to the agency to go through the correct process. Claim three is that OPM lacks statutory authority for retroactive rulemaking. And again, that's a pretty straightforward claim. This court has said in Health Insurance Association, the Supreme Court has said in both Bowen v. Georgetown Hospital, that agencies have limited power and we're not going to presume any power to make rules retroactively, including for legislative or including for interpretive rules. Unless Congress specifically says, you have authority to make those retroactively. There is no such authority for OPM anywhere in the statute. And the agency hasn't pointed to any. And so we would argue that whatever you decide about the rule and the interpretation of the statute going forward, the retroactive application of it can't stand. Doesn't your position depend on the notion that this is actually a change? And I took the government's briefing to characterize the practice as largely consistent with the reaffirmed practice, but that some of the staff who were implementing it in the way you advocate, as distinct from pairing the basic and the supplemental annuity, the way they now have expressly said. Do we know whether the past practice was predominantly in accord with your reading or not? Well, let me answer that in two parts. So there was, like you said, there was some confusion apparently within the agency as to what the agency did. And that's reflected in the two requests for guidance that are in the administrative record. I think they're JA 57 and 59. But that confusion was not between our two positions. So the confusion among the paralegals was between some paralegals would get an order that said, expressly said, divide the annuity supplement. And they would do it because, again, 8467 says, do what the divorce court expressly divides you to do. Other paralegals in the agency were not sure whether they should do that. And the reason was because they see this supplement correctly. So in our view as a social security supplement, it's a stand in for social security benefits for people who are required to retire by statute before they reach 62. And social security is not divisible. And so there was a question about whether, so the debate between the paralegals was, do you divide it when it's that, or do you not divide it because it's like social security? There's no indication that the agency ever, prior to 2016, took the position that you divide the supplement even where an order doesn't say anything about the supplement. That, as far as we know and is from the record, is entirely new as of 2016. And your support for the characterization that you just gave, which is very helpful, you know, do we divide when it's expressed or do we override the expression that it should be divided because we treat this like social security, which is indivisible? The best record support for that is where? Oh, I'm sorry, I'm not quite sure what. So I asked you a question about agency practice and understanding. And you gave me an explanation of what you thought were the conflicts between the different paralegals' understandings. And I'm asking you, if that is, in fact, what was going on, where would you point me in the record to support what you just described? Again, it's only, the record is very limited here. And so the only document that describes that conflict and that prior practice is the two requests for guidance, JA57 and 59. And then just the one other question you asked, it's not anything in the record, it's the lack of anything in the record about doing what they started doing in 2016 prior to that. There's no indication that they had ever done that before. Does OPM ever engage in rulemaking in the traditional sense? Yes, OPM does. And they have formal, there are formal OPM regulations relating to 8467 and how the agency processes divorce court work. Are there any judicial decisions on challenges to OPM's rulemaking or failure to rulemake? There are. You're essentially, as I understand your argument on the jurisdictional question, you seem to be arguing that this is really a rulemaking or something that should have been subject to rulemaking. The agency didn't engage in under normal APA procedures. We can challenge that. That's a pre-enforcement kind of issue. We can challenge their failure to engage in rulemaking without regard to even getting to the merits. We can challenge that failure and that's how we stay here. There's no case law. There are. I'm not blaming you. I'm just asking. I couldn't find any. We cited a couple of cases. We cited a few cases from the DC District Court in our brief that follow and apply this court's divine decision. One of them, the NTEU v. Whipple case in 2009. Do you have any Court of Appeals decision saying that if and when the OPM rulemakes or fails to rulemake, that is subject to review under the APA, which would bring it and take it out of the MSPB route? The MSPB doesn't handle rulemaking challenges, right? That's correct. Okay. I'll ask the government what to do, unless you know something to tell me. That's the part of the case that's perplexing to me. You're saying it's a rulemaking, a failed rulemaking. Right. And I would just note that divine was a challenge to OPM rulemaking. That was rules regarding, I believe it was reduction in force rules, but it was a challenge to OPM rulemaking. All right. Thank you. We'll give you some time and reply. Thank you. Ms. Moen. Can I start you before, and I don't mean to interrupt you, except I am, so maybe I do. Not a problem. Answer me on the rulemaking question. This case, as far as I'm seeing it, not definitively for the panel, the suggestion is you should have engaged in rulemaking here and you didn't. And that's their challenge. And how does OPM engage in rulemaking? And if so, what is your position on how you challenge an alleged failure to rulemaking, deficient rulemaking, or the merits of the rulemaking? Your Honor, OPM does engage in rulemaking. I think in thinking about the failure to use notice and comment procedures here in that claim, it's really applicable to think of it under this fully collateral question that's raised in Thunder Basin and Elgin. And what those cases have established is that where a claim, even if procedural, sort of inextricably intertwined in the substantive claim that needs to be challenged through the statutory review scheme, then it cannot, you can't circumvent that scheme by bringing that claim. And if we don't buy that, then you lose. No, Your Honor. In other words, I don't mean to be glib, but I mean, if they're saying you didn't pursue rulemaking, you simply failed to, you know, forgetting what we think about whatever it is you're proposing, you have to go through rulemaking. And that's our challenge. You fail to engage in rulemaking. Your Honor, we don't lose if that's the case. I think in the first instance, that would at the very least mean that the two substantive claims challenging OPM interpretation of the statute would still have to go through the CSRA scheme. And I think the fact that that would be the case is what shows that the notice and comment claim also needs to go through the scheme. Because if you allow the notice and comment claim to be severable and for this court to address it and not the federal circuit, you would have the very risk of inconsistent decision making. Let me change it this way. Suppose there isn't a challenge on the merits. You say you have a new rule in effect in their view. You've promulgated a new rule and you had to promulgate it through notice and comment rulemaking. You failed it. That a viable claim? Your Honor, I believe that claim would still have to be channeled rather through the CSRA scheme. Why? MSPB doesn't handle rulemaking challenges as far as I understand. Elgin is helpful on this point because there you had a constitutional challenge to the validity of a statute. And similarly there, the MSPB doesn't routinely handle constitutional challenges to statutes. And the court nonetheless said that the claims needed to be channeled through the CSRA scheme because you would ultimately get meaningful review on those claims from the federal circuit. So as the government's position, there is no way to challenge rulemaking. Your Honor, I believe there are specific provisions within the CSRA that allow for challenges to rulemaking as unfair practices. I believe it's 5 U.S.C. 1204 specifies some rulemaking challenges that can go directly to the MSPB. But no, in this case, I think it's important to remember that- No, no, no, wait. I'm just trying to get the framework in my head. Is it your position that there is no possibility, everything has to go through MSPB? Is that what you're saying? That's what I just heard you hinting at. Everything has to go to the, I didn't think the MSPB took challenges to claims with respect to failed rulemaking. Your Honor, if a claim as it does here implicates- No, don't do that. Stick with my hypothetical because that gives me a sense of what you're arguing in particular. Your Honor, I don't think you need to answer the question- No, but I do need to answer it in my head. I need to understand what the government's position is because that'll help me to understand how far you mean to reach. Our position is that where a claim implicates the calculation of federal retirement benefits and the statutes that provide for that calculation, it must be channeled through the CSRA scheme. And what do you want to try now and answer my question about? They're saying you had to use rulemaking to do whatever you just did and you didn't. It looks new to us. It should have gone through rulemaking. Is that a viable claim ever? Your Honor, it's hard for me to think of every conceivable situation. Think of any conceivable situation. And I'm sorry that I'm not being entirely helpful here. But again, I think that the key here is that any decision on that failure to rulemake challenge would carry that risk of inconsistency with the substantive claims that are already proceeding through the CSRA scheme. There are 69 individual- No, no, I understand that part of your argument. Just so you know, I'm not missing that part of the argument. I'm trying to understand, because it really leaps out here when you prepare this case, this question about whether or not there is a viable claim. You say, yeah, we rulemake. And so, and I assume that was probably so. But I want to know, there are lots of agencies that are subject to challenges because they didn't give notice and comment on something that was allegedly new or they didn't do it properly. And I'm just wondering, and they're not, this is not, that's not normally an MSPB question. And I was wondering what the government has to say about that. Your Honor, and I'm apologizing for not being definitive on sort of the entire universe of cases, because I really do think that the answer here is clear and confined to the fact that you have this sort of inextricably intertwined relationship between the failure to rulemake or the failure to follow particular rulemaking procedures challenge and the substantive claim. If, for example, the federal circuit, as a result of these 69 cases that are currently proceeding, says we agree with OPM that the statute unambiguously requires the supplement to be divided in the same way as the case amount, then there would be no reason to follow notice and comment proceedings for OPM because the text of the statute would allow for only one result. So that's why we believe that they're trying to parse off one of these claims versus the other, this very inconsistency that the CSRA was intended to. Although, and I'm going to shift a little bit to the retroactivity question, because it seems like there's a relationship between these two things to the extent that the exhaustion going through OPM and MSPB is required where there might be a defect, sort of facial reinforcement, legal defect in the rule or a failure to make a rule that you're going to get further into a course of conduct that you might then have to undo if exhaustion is required. And I had a question about your claim that the government can recoup overpayments where they're made on erroneous grounds, which seems to be not entirely, like the authority seems to stand for that, and that's not entirely what we have here. So I guess, do you have authority that would allow recoupment all the way back to 1987? Your Honor, we believe those authorities we cited in our brief provide that authorization. There is also specific statutory authority in section 37 U.S.C., 31 U.S.C., rather, 3716, which talks about administrative offset and recoupment of payments, and then there are regulations that govern recoupment specifically in the context of these FERS benefits we're dealing with. So we think that if the statute has said this is the way that benefits need to be paid out from the start, then that is the way that OPM was required to be paying out those benefits beginning in 1987. And importantly, I would just note that to the extent that an individual claimant would face financial hardship from having to pay back an overpayment or maybe detrimentally relied in changing financial positions based on an overpayment, there is a waiver mechanism in 5 U.S.C. 8470B, which allows OPM to waive the collection of overpayments if it would be against equity and good conscience. And the regulations just implementing that provision specify that cases of financial hardship where the individual is not themselves at fault for the overpayment are kind of good grounds for that type of waiver. I guess for me a clarifying question, which is the flip side of what I asked, or the same question that I asked Mr. Griffin, is what was the past practice? Was the past practice largely in accord with your current interpretation or not, and how do we know? Your Honor, so it's difficult to say. There was no formal regulation or formal interpretation of the statute via adjudication that is different from what OPM is now saying. My understanding is that a lot of this was occurring via computer coding and individual specialists interpreting court orders and making determinations. Again, we don't have evidence in the record about sort of the practice across the board, but as Plaintiff's Counsel raised, there are lettered questions that individual specialists had about when a court order specifies something about the supplement, what do we do? I think part of the reason maybe those questions hadn't arisen to that point is that OPM has promulgated regulations that give state courts some terms that they can consider using when they are issuing these divorce orders, and those terms don't use words like basic amount or supplement. They say gross annuity, net annuity, FERS benefits, benefits earned through service in the U.S. Department of Agriculture. I don't hear you saying that it's clear that there was no new interpretation. It seems like we'd be on pretty safe ground to say that the 2016 interpretation is a new interpretation that conflicts at least with some body of past practice. And so there's more of a retroactivity analysis that you'd have to go through in order to be able to recoup, no? Your Honor, I think to the extent there's a conflict, it's only with that informal operational on the ground practice. And that, I think, feeds into the retroactivity question because cases like Health Insurance of America, Association of America versus Shalala say, you know, if the agency is just saying this is what the statute that was in existence at the time required, you know, it can apply that retroactively. If this court were determined, for example, to only side with OPM based on deference to the 2014 policy, then maybe there would be a different question about retroactivity. And we think Shalala stands pretty clearly for that proposition. So if it were solely a question of deference, maybe OPM could only go back to 2014. But since our primary position is that this is what the statute is the best reading and it's the plain reading of the statute and what it's always required. I mean, I think the more fundamental question is where is your statutory authority to promulgate a rule with this kind of retroactive effect? And, you know, really reaching back and changing, you know, not changing things that people relied on, changing the legal landscape, at least with respect to somebody of these recipients. And I didn't see you citing that. Your Honor, it's just the general authority to administer all provisions of this chapter, right? We don't contend that OPM has specific retroactive rulemaking authority. But we don't think that changes the position here because, again, it's our contention that the statute has always required this result. And to the extent that specialists and internal operations were doing something different, that was an error at the time and it remains an error to this day. And OPM has authority to collect and resolve. So you're arguing that an interpretive rule can't be retroactive. But I thought that in Georgetown Hospital, we rejected that notion. Just because it's interpretive doesn't mean that the rule that is affecting some kind of substantive change necessarily reaches back to the statute. Your Honor, I think the key question that that case raised was whether the court is deferring to the interpretive rule or not. So if you have a situation where you have an interpretive rule that, you know, is filling a gap and the court says, look, we don't think this is necessarily the best reading of the statute, but we are going to defer to this rule that you promulgated, then you can only reach as far back as that rule. And we don't contest that. If this court were determined that OPM's right on the merits, but only as a result of deference to the 2014 memo, we don't think that OPM could collect before 2014. But because our primary position is that the statute has required this all along as the unambiguous best reading, we think that OPM can go back to correct those errors. All right. Thank you. Thank you, Your Honor. If there are no further questions, we ask that this court vacate the judgment below. Mr. Griffin, why don't you take two minutes? Thank you, Your Honor. I wanted to just very briefly address the retroactivity issues you were just talking about. And I just want to point out that there are three main cases the government relies on, and none of those involve retroactive rulemaking. So they cite OPM v. Richmond, King v. OPM, a federal circuit case, and then U.S. v. Leahy Clinic, a first circuit case. And one of those is about whether a stopper runs against the government. And one is about OPM's statute that allows waiver of recovery for various equitable reasons. One is about the government's common law, rights of recovery under state law. None of them are about rules being applied retroactively. And then, if I can very quickly, Judge Blard, you asked about, for any evidence in the record, whether this is a change. And again, there's nothing that really documents the agency's past practice in the record. But I think when you read the advice memorandum, and I'm looking at page 60, the first page of that 2014 memorandum, it's pretty clear that the agency itself understands this is a big shift. And so what they say is, after careful review, we've determined not only does 8421C obligate OPM to honor provisions that expressly divide an annuity supplement, this provision also requires OPM to divide an annuity supplement in circumstances where a corporator simply divides up for his annuity benefit. And I think just the language of that makes clear is, hey, we just discovered how this works, and this is different than what we were doing before. And so your view on the line between retroactive and prospective is what? How would you draw that line? Clearly, they have authority to clarify going forward. Yes. Right. Say that again. What did you say? Clearly, they have authority to clarify their policy going forward. They think it's in conflict with the statute. And they have an obligation to comply with the statute if we were to hold that their reading is correct, but is, in fact, a change from past practice that would trigger a retroactivity analysis. And what is your view about where the line between retroactive application and application to current cases is drawn? So that line is the line between benefits to be paid out in the future and benefits that have been paid out. Benefits to be paid out. So somebody who's received some but not all. Change in their case would happen. These are annuity benefits paid out in monthly installments. And so July 1, 2016, when this change went into effect, it both changed people's monthly payments going forward. And the agency calculated retroactively and said, oh, and we're applying this change to last month, which means you owe us this many dollars. So that's the retroactivity. I haven't worked through this myself, but presumably you could say a divorce decree that has yet to be interpreted by the agency has yet to be entered. Well, that's a slightly different question. I don't think that's quite retroactivity versus prospective. I think that's the question on whether the rule has immediate effect or not. So you could imagine the agency implementing a rule that doesn't have immediate effect. And that is from July 1, 2016, any divorce decrees entered into after that date, this is how we're going to interpret that. And that doesn't have any change on current benefits, prospectively or retroactively. But that's obviously not what this is. Thank you.
judges: Henderson, Pillard, Edwards